```
1              UNITED STATES BANKRUPTCY COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                  (OAKLAND DIVISION)

4   In re:

5   INDEPENDENT ADOPTION CENTER,     Case No. 17-40327

6                                    Chapter 7

7                                    Oakland, California
                                     February 15, 2017
8                                    2:26 p.m.

9                    Debtor.
    _____/

10
                    TRANSCRIPT OF PROCEEDINGS
11                    STATUS CONFERENCE

12        BEFORE THE HONORABLE ROGER L. EFREMSKY
             UNITED STATES BANKRUPTCY JUDGE
13

14  APPEARANCES:

15  For the Trustee:        RINCON LAW LLP
                            BY: CHARLES P. MAHER, Esq.
16                          268 Bush Street #3335
                            San Francisco, California 94104
17

18  For the U.s. Trustee:   OFFICE OF THE U.S. TRUSTEE
                            BY: MAGGIE H. McGEE, ESQ.
19                          1301 Clay Street #690N
                            Oakland, California 94612
20

21
    Also Present:           MARLENE WEINSTEIN, Chapter 7
22                          Trustee

23

24

25
```

```
 1   APPEARANCES (CONTINUED):

 2
     For the Debtor:         LAW OFFICES OF MARTHA J. SIMON
 3                           BY: MARTHA J. SIMON, ESQ.
                             22 Battery Street Suite 888
 4                           San Francisco, California 94111

 5                                       -and-

 6                           LESLIE KANE, ESQ.
                             35 Dolores Street Unit 206
 7                           San Francisco, California 94103

 8
     Court Recorder:         L. BLUE
 9                           UNITED STATES BANKRUPTCY COURT
                             1300 Clay Street
10                           Oakland, California 94612

11
     Transcription Service:  Jo McCall
12                           Electronic Court
                             Recording/Transcribing
13                           2868 E. Clifton Court
                             Gilbert, AZ 85295
14                           Telephone: (480) 361-3790

15

16

17

18

19

20

21

22

23

24

25
```

<pre>
 1              P R O C E E D I N G S
 2  February 15, 2017                    2:26 p.m.
 3                      -oOo-
 4          THE COURT:  All right.  Next is Line Item No. 3,
 5  in the matter of Independent Adoption Center, Case No.
 6  17-40327.  This is on for a status conference.
 7          MR. MAHER:  Good afternoon, Your Honor, Charles
 8  Maher, Rincon Law, on behalf of the Trustee, Marlene
 9  Weinstein, who is in the courtroom.
10          THE COURT:  All right.  Very good.  Good
11  afternoon.
12          MS. McGEE:  Good afternoon, Your Honor, Maggie
13  McGee for the U.S. Trustee.
14          THE COURT:  Ms. McGee.
15          MS. SIMON:  Good afternoon, Your Honor, Martha
16  Simon and Leslie Kane, appearing on behalf of the Debtor.
17          THE COURT:  All right.  Very good,
18          MS. KANE:  Good afternoon, Your Honor.
19          THE COURT:  Good afternoon.  All right.  I have
20  read the Trustee's Status Conference Statement as well as
21  the Debtor's Status Conference Statement.  Mr. Maher, go
22  ahead.
23          MR. MAHER:  Your Honor, there's a little bit of an
24  update in Texas.  We didn't have complete or accurate
25  information.  Some files were given out before the
</pre>

1  petition; some files were sent out after the petition to

2  the clients.  There are 20 boxes of closed case files with

3  the director down in -- I think outside of Houston.  I've

4  been in contact with the Attorney General's Office in

5  Texas, and they're ready to take -- pick up those records

6  whenever they can --

7            THE COURT: Okay.

8            MR. MAHER: -- if the Court authorizes it.  There

9  are also two -- there's a cabinet, file cabinet, with two

10 drawers full in the Houston facility -- Bell Aire actually,

11 and they're ready to pick those up as well.

12            THE COURT: Okay.

13            MR. MAHER: And so State law in Texas, California,

14 Indiana, Connecticut and Florida all call for return of the

15 files to the State.

16            THE COURT: Right.  And the other three states,

17 how are things going there?

18            MR. MAHER: Well, in Georgia, it's actually not

19 part of the --

20            THE COURT: Right.  The Debtor apparently signed a

21 lease.

22            MR. MAHER:  -- so there are two others, North

23 Carolina and New York.  We're further down the road with

24 New York, and we have an agency that will know by the end

25 of this week whether it will take the bulk of the files.  I

1  have been in frequent contact with whatever the Department

2  of Social Services there is called, with an in-house

3  attorney and their director. It's right now, we think, 145

4  files roughly will be taken. There's about another I would

5  say 60 or 70 in two different categories. One is

6  terminated, which means the adoption process was brought to

7  a halt at some point, we believe without approval of the

8  couple or individual to adopt.

9         THE COURT: Okay.

10         MR. MAHER: And then another category that's on

11  hold for one reason or another, and so we're working

12  through those. With the terminated files, I don't think

13  any agency is going to be interested in taking them, and so

14  we may end up being in a position of having to seek

15  approval to destroy them.

16         THE COURT: Right.

17         MR. MAHER: I think they're probably problem

18  files.

19         THE COURT: Are the files kept in both paper and

20  electronic form?

21         MR. MAHER: Yes, it's a mix, Your Honor.

22         THE COURT: Okay.

23         MR. MAHER: They were in the process of converting

24  to electronic and didn't get all the way through.

25         THE COURT: Okay. All right. And then with those

1  three states, I know that it was incumbent upon the Debtor

2  prior to filing the bankruptcy to have made arrangements to

3  get the files back to the individual seeking to adopt the

4  children.  That was not done, and basically the Adoption

5  Center was just closed abruptly.

6          MR. MAHER: Correct, or turn them over to the

7  state or to another agency.

8          THE COURT: Right.  And in fact, the schedules

9  weren't complete, and then I know recently there was an

10 amendment listing apparently a substantial number of

11 parents.  The number jumped from individuals and families

12 from approximately 800 to approximately 3,225?

13         MR. MAHER: Yes, Your Honor.

14         THE COURT: All right.  With regards to the

15 clients' name and addresses, I'm concerned about having the

16 addresses of those potential -- those parents -- or those

17 clients; and maybe some of them are parents now; I don't

18 know if they are or aren't -- those being available to the

19 public.  I think those things should be confidential.  I

20 think the Attorney General from the State of Texas

21 expressed the same concern.

22         MR. MAHER: That's correct, Your Honor.

23         THE COURT: All right.  So I'm going to order

24 that -- Ms. Simon, you're to immediately in the next 24

25 hours upload an amended schedule, and I'll see if I've got

all the documents, but it would be Schedule -- your

original Schedule G, your amended Schedule G, your

creditors' matrixes, whatever you have filed, and I want to

remove the clients' addresses from them.

I want an order immediately when you go back to

your office today that authorizes the Clerk to remove from

public access those documents, Schedule G, the amended

Schedule G, the creditors' matrix, any other documents that

you've got that there are addresses in there. I want those

to be removed from public access. They'll be available to

the Trustee and any appropriate party that would need

access to that information.

MS. SIMON: I'm sorry, Your Honor, are you

instructing the Trustee to do that order?

THE COURT: No, I'm instructing you to do it. It

should have been done by you. You were more concerned

about the employees. And with regards to the order I

issued with regards to employees, I'm vacating it. I want

an amended schedule listing the employees' names and

addresses, and that is to be made available to the public.

MS. SIMON: Your Honor, for the record, I would

just like to say that with regard to the location and

addresses of those families, if a family went on to an IC

website prior to the closure, they would be able to -- and

birth mothers would be able to find the names and the

1　location of those families.

2　　　　　THE COURT: That may be the case, but for purposes

3　of this bankruptcy, I'm not going to have anything done in

4　this bankruptcy, and to the extent that you may have

5　violated any State or Federal laws, that's upon you to deal

6　with, but I'm ordering that their addresses be -- will be

7　restricted, so I want amended documents just listing the

8　names of the clientele.

9　　　　　MS. SIMON: I understand, Your Honor.

10　　　　　THE COURT: All right.  Mr. Maher, what else?

11　　　　　MR. MAHER: Your Honor, what we would like to do

12　is, pursuant to regulations and those -- well, three states

13　remaining, is to be able to turn those records over to

14　those states.

15　　　　　THE COURT: Right.

16　　　　　MR. MAHER: California was done.  Indiana was

17　done.  There are duplicate files in California that we know

18　about in Los Angeles that the State will pick up.

19　　　　　THE COURT: Okay.

20　　　　　MR. MAHER: There's some computers that they will

21　pick up, and so we'd like authority to surrender the

22　documents and those few computers immediately, if we can.

23　　　　　THE COURT: Okay.  Ms. Simon, you have no

24　objection to that?

25　　　　　MS. SIMON: No, we don't, Your Honor.

1        THE COURT: All right.  There's no other
2   objections I'm aware of.  Is there anybody in the court
3   that wishes to be heard?  Ms. McGee?

4        MS. McGEE: Yes, Your Honor.  I guess this is to
5   Mr. Maher.  I don't -- if the States are exercising their
6   police or regulatory authority under 362 with the exception
7   under 362, I don't think a court order is necessary.  If
8   the Trustee is asking for particular action that this Court
9   can do, I'm not sure what that is, and I'm not sure --
10  there's been nothing in writing, nothing, no notice, no
11  opportunity to be heard about this.  So it doesn't seem
12  appropriate to do this on essentially an ex parte basis.

13       THE COURT: Well, this is the problem we've got.
14  We've got a Debtor who had a responsibility to properly
15  make arrangements to turn over all of these client files
16  that contain very confidential information, personal
17  financial information, family history, medical histories.
18  It could be a whole host of things.  The Debtor abrogated
19  their duty in doing that.  They were supposed to turn them
20  over to those States that would simply come in and the
21  State agencies would pick up all of the files, whether they
22  be in paper or electronic form.  They didn't see to it that
23  it was all done.

24       With regards to the three States that the Trustee
25  has articulated that say that we don't pick them up, you

1  have to make arrangements with the clientele to get their

2  information back.  The Debtor basically just threw up their

3  hands and filed Chapter 7 and turned it over to Ms.

4  Weinstein to do.  We don't have any money in the estate

5  that'll cover it, so I think the order that Mr. Maher is

6  seeking is appropriate under the circumstances.

7        To the extent that these agencies who are picking

8  up the files are exercising their police powers, yes, they

9  don't need an order, but to the extent there's some concern

10 about it, I think that's all the order is going to

11 indicate, that they have the authority from the Bankruptcy

12 Court and the Trustee has the authority to turn them over.

13 So there's a comfort order for that matter.

14       But to the extent that they wouldn't be

15 exercising police powers, I think this is an appropriate

16 order that says to the State agency, you have the green

17 light from the Bankruptcy Court.  Don't worry about any

18 stay.  You can pick it up.  The Trustee has got an order

19 that protects her, that she's turning over this type of

20 information.  I don't think we have any other alternative

21 to do here, because there's no money in the estate to see

22 what needs to be done.

23       I've got a similar case with the Municipality

24 that has to destroy or make arrangements for the return

25 and/or destruction of records, and they're required under

1  State law to hold them for a year, and it's an expense to

2  do it.  We don't have that luxury here.  In that case,

3  there's the money to cover it.  So I think -- unless you

4  have something else, I think this order being sought by Mr.

5  Maher is appropriate.

6          MS. McGEE: The U.S. Trustee is completely

7  sympathetic with the circumstances here.  The U.S. Trustee

8  just wants to make sure that the laws are complied with.

9  So if Your Honor rules that this is not a comfort order --

10         THE COURT: Unless the U.S. Trustee has something,

11 a better suggestion, I'm open to hear it, but I don't know

12 what that would be.

13         MS. McGEE: Well, I'm really still not clear what

14 is being asked for, except that it is a comfort order.  If

15 it's a comfort order --

16         THE COURT: What they're asking for is a specific

17 order that says that Ms. Weinstein can take the records in

18 these ten facilities or in these eight States, and it might

19 only be nine facilities because the Georgia facility

20 apparently is under a separate corporation, but the lease

21 is being held by the Debtor, that those records that Ms.

22 Weinstein has, will do her best to comply with State law,

23 and to those five States that we know of that will take the

24 records, she's going to get an order that authorizes her to

25 turn it over, and they can accept it.  And it may be

1    exercise of police powers and you may be right; they don't
2    need the order, but it'll be a comfort order to that
3    effect.

4         MS. McGEE: It's just that if there's nothing in
5    writing, it's a lot more -- I've had extensive
6    conversations with Mr. Maher.  There's many different
7    levels of documents, different things happening in
8    different States, so since there is nothing in writing, I
9    don't know what the order is going to say.

10         THE COURT: Do you want to review -- I'm happy to
11   have you review the order.  If you have any issues, I'll do
12   that.

13         MS. McGEE: I would appreciate that, Your Honor.

14         THE COURT: And if there's an issue -- I mean that
15   would be something I would think you could like at within a
16   few hours that you're presented with it, and if there's an
17   issue, get me on the phone, and I'll look at it and go
18   through it.  But I don't think we have the luxury of
19   putting a lot of details in it because Ms. Weinstein and
20   Mr. Maher are doing their best to comply with the State
21   laws which the Debtor chose not to do, and this is the
22   best.

23         MS. McGEE: The U.S. Trustee completely
24   understands that, appreciates the circumstances here.  The
25   Trustee is in an incredibly difficult situation.  We are

1  completely understanding of that.

2            THE COURT: Okay.  All right.

3            MR. MAHER: Thank you, Your Honor.  We also will

4  be dealing with the other two States where it's not so

5  simple, and --

6            THE COURT: And those two are?

7            MR. MAHER: North Carolina and New York.  And so

8  we'll be transferring, we hope, great numbers of files to a

9  single or maybe two independent licensed agencies in those

10 States, working with the State Department of Social

11 Services in each one.  And we'd like to get shortened time

12 to be able to transfer those files to an identified agency,

13 again, all in compliance with the applicable State law, and

14 also, if we can't find a home for terminated files, to be

15 able to give notice that we intend to destroy them, unless

16 someone objects.  And I'm thinking seven to ten days notice

17 for that.  We know who the terminated clients are.  We have

18 their addresses, and we can serve them specifically rather

19 than the whole creditor body.

20            THE COURT: Okay.  All right.  Any objection to

21 that?

22            MS. McGEE: No, Your Honor.

23            THE COURT: And it would be ten day notice.

24            MS. McGEE: Right.  Ten-day notice of what?

25 There's nothing on file about what is being shortened, but

1  that being said, we have no objection to the motion

2  shortening time.  If we're allowed to object to whatever

3  motion is filed, that's --

4          THE COURT: And you want to see the notice, is

5  what you want to look at?  Is that -- because what they're

6  asking for is an order shortening time to proceed, that

7  they're going to turn over the documents, to the extent

8  they can, to the State agency that might be willing to take

9  them.  To the extent that there are remaining files or

10 information that are either in paper or electronic format,

11 Mr. Maher then wants to get an order shortening time so

12 that he can send out a notice to these -- the clientele who

13 had terminated -- and this is just the terminated files,

14 not the ongoing, but just the terminated files, to say that

15 you have ten days to raise an objection, and if so, it'll

16 be heard on such and such a date.  That's essentially the

17 relief you're requesting.

18          MR. MAHER: That's correct.  And also with the

19 transfer of active files to another agency, we want to

20 shorten time on that as well.

21          THE COURT: Right.

22          MS. McGEE: Right.  So there was a motion for

23 shortened time filed.  It doesn't sound like this is the

24 same motion for shortened time, because that said we're

25 shortening time to turn over or destroy -- or not destroy;

1 it wasn't clear to me whether it was destroy.

2          THE COURT: To deal with the business records.  It

3 wasn't specifically dealing with the clientele records.

4 This is separate and distinct from that.

5          MS. McGEE: Right.  Again, this motion is not in

6 writing, so it's difficult to understand what it is --

7          THE COURT: Right.  The problem is -- that's why I

8 set this for a status conference because we don't have the

9 luxury of time here.  I think this has been articulated on

10 the record, that I will grant it.  It's an order shortening

11 time -- I'm going to authorize the Trustee and Trustee's

12 counsel to turn over any of the clients' files, terminated

13 or otherwise, to the State agencies who will take them, or

14 where the State agencies have designated another agency

15 within the State to take those files, or if the State

16 agency authorizes another legitimate adoption center

17 similar to what we had here, that those files can be turned

18 over.

19          To the extent that those files cannot be turned

20 over, and we're just talking here now about the terminated

21 files -- the files where there's been a termination of the

22 adoption, and Mr. Maher on behalf of the Trustee is

23 authorized to give a ten-day notice to those individuals

24 stating forth that we have an attempt to turn them over to

25 the State agencies; they would not take them.  We have your

1   files either in electronic or paper format.  We're going to

2   destroy them unless you raise an objection, and the

3   objection may be simply, I want my files; if I could at

4   least have an opportunity to get them.  And then we would

5   have -- if they do that, Mr. Maher, when would you expect

6   to have a hearing, seven days thereafter?  Because they're

7   going to need -- unless we say in the notice that you have

8   the ten days and you set a date that's at least seven days

9   out from that point.

10          MR. MAHER: I can do that.  That's probably

11  preferable.

12          THE COURT: It's better to do that, and then if

13  they raise an objection, even if it's just, I'm objecting

14  on whatever basis, I'll hold a hearing with regards to

15  those clientele who are requesting a hearing, and we'll do

16  our best to deal with it.  We may be in a situation, and

17  I'll be dependent upon more information from Mr. Maher and

18  Ms. Weinstein as to whether we have the ability to send an

19  individual out there to actually get their file and give it

20  to them or make some arrangements to do that.  Because

21  these files are all over, maybe in multiple locations in a

22  particular State, we may not have the ability to do that.

23  You don't even know if you've even got the files.  You've

24  got a list of who the clientele were, but you may not even

25  have those files there.

1           MR. MAHER: It's possible.  I think we do.  I
2   think the Debtor was pretty good about that.

3           THE COURT: Okay.  But if they raise the
4   objection, then we would give a date, seven days, and they
5   can appear telephonically.  They do not need to appear
6   here.  They don't need to file anything, other than their
7   initial objection, and we'll deal with it that way.  So I
8   think we're kind of between a rock and a hard spot.  Either
9   we can turn them over -- the files to the State agencies,
10  or hopefully get them back to the individuals.  And if not,
11  the alternative is -- probably the best thing is to destroy
12  the records to protect the privacy of those individuals.
13  The only reluctance I have there is if there's some
14  documents in there that are hard to come by, that the
15  destruction of them could somehow interfere with an
16  adoption, but if these are just the terminated files, I
17  think there's a lesser possibility of that happening.

18          MR. MAHER: I think that's correct, Your Honor,
19  and I think if they wanted those files, they would have
20  retrieved them, and I'm sure the Debtor would have returned
21  them.

22          THE COURT: All right.

23          MR. MAHER: I want to clarify two things, one, we
24  still do need to abandon business records, most of which
25  are in Concord, and we'd like shortened time on that.  All

1  the confidential records have been segregated for

2  destruction out there.  And then also, I think if we're

3  transferring to a private agency with the State's blessing

4  or consent, I think we should provide notice to people

5  about that, and ten days for that as well.

6        THE COURT: Okay.  All right.  Ms. Simon?

7        MS. SIMON: We're somewhat concerned with the

8  employee records there as well, because the ex-employees

9  need information, for instance, with regard to health

10  insurance and continuing Medi-care benefits or whatever

11  they might have.  So to the extent that the Trustee is in

12  possession of those documents, we might want to keep those

13  documents, and the Board might want to keep those

14  documents.  We can certainly arrange that.

15        MR. MAHER: Although if they're abandoned, they go

16  back to the Debtor, and the Debtor can store them

17  somewhere.

18        THE COURT: Right.  Those are going to be turned

19  back then to you.

20        MS. SIMON: That's fine, Your Honor.

21        THE COURT: Okay.  Let me go back over this.  With

22  regards to -- Ms. Simon, you're going to prepare two

23  orders, one vacating the employee address restriction.

24  You're going to file amended schedules, whether they be G,

25  the creditors' matrix, putting back the employees addresses

1   there.  You're going to prepare an order that allows

2   restriction, and you're going to file amended documents

3   removing the addresses having to do with the clientele, and

4   you'll upload documents removing their addresses -- will

5   restrict from public access -- only two orders dealing with

6   that aspect of it.

7            With regards to the request for order shortening

8   time on the destruction of the business records, to the

9   extent the Trustee doesn't keep them, they will be

10  abandoned, and then any of the documents will return back

11  to Ms. Simon.  You can make arrangements with Mr. Maher to

12  get those documents.  Apparently, those are just the

13  documents -- do you have them -- do you know if they're

14  other than just Concord or are they around the country or

15  what?

16           MR. MAHER: There's very little around the

17  country.  They were centrally administered out of Concord.

18           THE COURT: Okay.

19           MS. SIMON: Your Honor, may I request 48 hours to

20  prepare the --

21           THE COURT: Well, the ones I want, I want done

22  within 24 hours.  Those need to be done immediately.  All

23  right.  So with regards to the business records, I'm

24  granting the order shortening time.  You've got all the

25  necessary addresses.  Ms. Simon has provided you with the

1  amended schedules.  With regards, to the turnover and/or

2  potential destruction of the client terminated files only,

3  I'm granting the order shortening time.  That can be done

4  on ten days notice.  It'll say that if you object to them

5  either being turned over or destroyed, you have seven days

6  to object.  You'll set in the notice a hearing seven days

7  out from the ten-day period that runs.  Ms. McGee, I'd like

8  yuo to look at it, and if you have any questions about

9  that, but if there's a problem, get me on the phone, and

10 we'll look at that on an expedited basis.  Okay.  Anything

11 else?

12          MR. MAHER: No, Your Honor.

13          THE COURT: Okay.

14          MR. MAHER: Thank you, Your Honor.

15          MS. McGEE: Oh, Your Honor --

16          THE COURT: Yes.

17          MS. McGEE: We do have a meeting of creditors.  No

18 notice has gone out.  Because of the status conference, the

19 Court had stopped that.

20          THE COURT: Right.

21          MS. McGEE: So we need 21 days and 45 days.  So

22 we're really running up against it.  So we have to get that

23 notice out today or tomorrow.

24          THE COURT: Okay.  Here's the thing.  I've got to

25 get -- I've got the addresses -- upstairs, they'll take all

1  the addresses, but we will have the addresses for the

2  employees.  So that problem has been alleviated.  But we're

3  going to have issue whether notice will have to go out to

4  the clientele, but we've got the addresses, so they can put

5  it -- but we're going to have individually send out those

6  notices.  But we're talking a substantial number.  That is

7  going to be a problem.

8            MS. McGEE: Right.  So the law requires that --

9            THE COURT: They've got to get notice.

10            MS. McGEE: They have to get notice, and --

11            THE COURT: The problem is, once it goes out on

12  BNC, their address is going to be easily accessed.

13            MS. McGEE: I don't know, because 21 days from

14  today, I think I calculated to be March 7th.  And we have it

15  scheduled and a room reserved just on the possibility that

16  a large number of people will appear in the auditorium

17  across the street.

18            THE COURT: All right.  Let me do this.  Let me

19  take a break and talk to the Clerk of the Court here and

20  get a suggestion from her on how to deal with it.  The

21  employees is not going to be a problem now.  The question I

22  have is with regards to the clientele.  I don't know if

23  it's supposed to be protected or not, their addresses, but

24  their names are going to be there.  People may be able to

25  figure, but they may be sensitive, whether they want to

1 know people that were attempting to adopt or not, but let

2 me talk to my Clerk of the Court, and I'm going to take a

3 recess for five minutes.

4          MS. McGEE: Thank you, Your Honor.

5          MS. SIMON: Thank you, Your Honor.

6     (Whereupon, a recess is taken at 2:48 p.m., and the

7 court is reconvened at 2:59 p.m.)

8          THE COURT: All right. Back on the record. I've

9 spoken with the Clerk of the Court. The problem with the

10 notice for the 341, I don't think we're going to be in a

11 position to restrict the addresses of the clientele. To

12 the extent that -- and I don't know what the law is; I'm

13 just raising it because the Attorney General from the State

14 of Texas raised the issue that there may have been a

15 prohibition about listing the clientele by name and let

16 alone address. To the extent there's been any violation of

17 State or Federal law, we're going to have to deal with it,

18 but at this juncture, I'm not going to -- I just need one

19 order from you, Ms. Simon, that has to do with the

20 employees. I'm vacating my order restricting access to

21 their information. I want an amended list with the

22 employees and their addresses so that we can get that

23 notice out, and I need that -- we do have the addresses of

24 the employees, so we're going to get that out to BNC, but

25 the problem is, with the 341 notice or any other notices

1  that would need to go to the clientele, either on pending

2  or terminated cases, to the extent that they're creditors,

3  they're entitled to notice. We've got to do this through

4  BNC. We don't have the money to be done individually where

5  the court would have to send it out, and it would have to

6  be done each and every time. So I am not in a position at

7  this time to issue any order restricting the addresses of

8  the clientele. So I'm going to take the pending list,

9  leave it as is. There's no need to do anything. You don't

10 need an order on that, but they're going to get notice of

11 it. So we should be in a position tomorrow to get that

12 notice out, Ms. McGee.

13        MS. McGEE: Terrific, Your Honor. I'll contact

14 the Clerk and let her know when and where.

15        THE COURT: Okay. You can touch base with the

16 division manager here, and I'll do the same. I think she's

17 not in the office today; that's why I had to get a hold of

18 the Clerk of the District. Yes.

19        MS. SIMON: Just to clarify, Your Honor, we do not

20 have to amend the Schedule G redacting the names.

21        THE COURT: No, or the creditor matrix --

22        MS. SIMON: Or the credit matrix.

23        THE COURT: But I do want -- I'm going to vacate

24 my order for the restriction of the employees. You're

25 going to need to upload -- whatever documents that are on

1  the creditor matrix, I need to have their names and

2  addresses, and I need that done like right away, so that we

3  can get those out.  I think you've got them in electronic

4  form that you can do that?

5        MS. SIMON: We do, Your Honor.  Would you like

6  simply an addition -- an amendment to the creditor matrix

7  adding those employees' names, or would you like a total

8  new matrix.  I was dealing quite a bit with the division

9  manager as to how they preferred it and that bit of

10  different information.

11        THE COURT: I think if you take the -- the way you

12  had your original matrix, just put all of those addresses

13  there and just put them on there so she's got one document.

14  So probably upload a new creditor matrix --

15        MS. SIMON: An amended matrix with everyone's

16  names.

17        THE COURT:  -- a matrix that has everybody with

18  all the addresses, and there's going to be no restricted

19  addresses for purposes of notice.

20        MS. SIMON: Okay.  Thank you, Your Honor.

21        THE COURT: All right.  If this was an 11 and

22  there was money, we could do it differently, but

23  unfortunately it's not.  All right.  Mr. Maher, anything

24  else?

25        MR. MAHER: No, Your Honor.

1            THE COURT: All right.  Ms. Simon?  Ms. Kane?

2            MS. KANE: Thank you, Your Honor.

3            MS. SIMON: No, Your Honor, thank you.

4            THE COURT: All right.  Ms. McGee, thank you.

5            MS. McGEE: Thank you, Your Honor.

6            MR. MAHER: Thank you very much, Your Honor.

7            THE COURT: Okay, thank you, Ms. Weinstein.  All

8  right.  We're adjourned.

9       (Whereupon, the proceedings are concluded at 3:02

10  p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    CERTIFICATE OF TRANSCRIBER

5

6

7           I certify that the foregoing is a correct

8    transcript from the digital sound recording of the

9    proceedings in the above-entitled matter.

10

11   DATED: February 27, 2017

12

13                         By:___/s/ Jo McCall_____

14

15

16

17

18

19

20

21

22

23

24

25