Charles P. Maher, State Bar No. 124748
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, California 94104
Telephone No.: 415-996-8280
Facsimile No.: 415-680-1712
Email: cmaher@rinconlawllp.com

Counsel for MARLENE G. WEINSTEIN,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

In re

INDEPENDENT ADOPTION CENTER,

Debtor.

Case No. 17-40327 RLE
Chapter 7

[No Hearing Requested]

**SECOND *EX PARTE* APPLICATION FOR ORDER LIMITING NOTICE
FOR SINGLE TRANSACTION (F.R.B.P. 2002(m))**

Marlene G. Weinstein, Chapter 7 Trustee of the estate of the above Debtor, respectfully represents:

1. The above Debtor filed a voluntary Chapter 7 petition on February 3, 2017. It operated nine offices in seven states. An affiliate operated an office in an eighth state.

2. The Trustee has turned over or is in the process of turning over records to state agencies in five states whose laws require or provide for taking possession of adoption files.

3. The two remaining states, New York and North Carolina, are more complicated. In those states, the Debtor was required to arrange for a transition of confidential adoption files to another licensed agency but failed to do so.

4. An agency in New York, Spence-Chapin Adoption Services, offered to take 41 of the 200 files in New York.

5. On March 7, 2017, the Court entered an order limiting notice for the transfer of 41 New York files to Spence-Chapin Adoption Services. The notice was filed but inadvertently not served.

6. On March 22, 2017, Spence-Chapin Adoption Services approached the Trustee to indicate that, in addition to the 41 files it previously was willing to accept, it would accept the approximately 100 files the Debtor characterized as "Current."

7. In New York, the Debtor maintained approximately 200 original files. As the Trustee explained in her March 7, 2017, application for order limiting notice, the files fell into the following categories:

   (a) "Alumni." Alumni were families whose adoptions had been finalized and complete. The Debtor was required to retain alumni files for consultation in the future. There are 25 individuals or couples in this category.

   (b) "Current-With-Baby." In this category were adoptive parents with physical custody of babies with adoptions that had not yet been finalized. There are eight individuals or families in this category.

   (c) "Home Study." The Debtor was required to do home studies of prospective parents who had entered into contracts with the Debtor to begin and complete the adoption process. The prospective adoptive parents were reviewed for financial well-being, safety of the home, and fitness for parenthood. There are eight individuals or families in this category.

   (d) "Current." In this category were most of the Debtor's clients. These were individuals or couples who had completed the home study process and whose names were being circulated among potential birth mothers as potential adoptive parents for their children. There are 100 in this category.

   (e) "Current – Not Active." These families removed themselves from circulation likely for a temporary period of time. Their files could be re-activated and the families put back into circulation. There are six in this category.

///

(f) "Hold – Client Choice." The prospective adoptive parents voluntarily removed themselves from circulation and put themselves on hold. There are 24 in this category.

(g) "Hold – Administrative." For unique reasons, the Debtor removed these prospective parents from circulation. There are 10 in this category.

(h) "Conversion." One family in this category completed the home study process with another adoption agency and then entered into a contract with the Debtor to be part of its adoption effort. There is only one in this category.

(i) "Terminated." Individuals or families in this prospective parent category had contracts with the Debtor but the contracts were then terminated and the files closed. There was no adoption. There are 41 in this category.

8. To the Trustee, the Current-With-Baby category is the most urgent. In those cases, court proceedings are likely pending with finalization of adoptions waiting for superior court approval. In some instances, the Debtor provided the necessary certificates to the superior court. In others, it had not reached that stage. Most importantly, under New York law, the Debtor was vested with legal custody over the children who were in the physical custody of the adoptive parents until the adoption is finalized.

9. On March 22, 2017, Spence-Chapin Adoption Services approached the Trustee to indicate that, in addition to the 41 files it previously was willing to accept, it would accept the approximately 100 files the Debtor characterized as "Current," the largest category.

10. The Trustee does not believe she will be able to reach an agreement with any agency to take all files.

11. At this time, the Trustee believes it is in the best interest of the estate and the clients in the categories identified in paragraph 4(a) – 4(d) above for transfer of their files to Spence-Chapin. She intends to seek an order authorizing her to transfer the approximately 140 files to Spence-Chapin. The transfer has no economic value, although it is likely to reduce administrative expense in dealing with these 140 files – particularly if an urgent matter in a pending adoption case arises.

/ / /

12. By this application, the Trustee is requesting an order F.R.B.P. 2002(m) limiting notice of the transfer of files to Spence-Chapin, to the approximately 140 individuals or couples whose files fall into the Alumni, Current-With-Baby, Home Study, and Current categories identified above, the Debtor's counsel, the Office of Children and Families in New York, and the Office of the United States Trustee.

DATED: March 22, 2017         RINCON LAW LLP


                              By: */s/Charles P. Maher*
                                  Charles P. Maher
                                  Counsel for Marlene G. Weinstein, Trustee