Charles P. Maher, State Bar No. 124748
RINCON LAW, LLP
200 California Street, Suite 400
San Francisco, CA 94111
Telephone No.: 415-840-4199
Facsimile No.: 415-680-1712
Email: cmaher@rinconlawllp.com

Counsel for Marlene G. Weinstein,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>INDEPENDENT ADOPTION CENTER,<br><br>Debtor. | Case No. 17-40327 RLE<br>Chapter 7<br>Hon. Roger L. Efremsky |

**MOTION TO COMPROMISE**

Marlene G. Weinstein, Chapter 7 Trustee of the estate of the above Debtor, moves the Court for an order authorizing her to enter into an agreement with Navigators Insurance Company ("Navigators") and former directors and an officer of the Debtor ("O/D Defendants") to resolve certain disputes over insurance coverage for claims against the O/D Defendants in the Trustee's adversary proceeding. As part of the agreement, Navigators will pay the estate $500,000 on behalf of the O/D Defendants, and to reduce any potential liability they may have, if any, Navigators will also release any claims it may have against the bankruptcy estate in exchange for a release by the Trustee of any and all claims the estate may have against Navigators, including "derivative" claims, and the O/D Defendants will release Navigators from any and all claims they may have against Navigators involving the Navigators' policy. The Trustee is not providing a release to the O/D Defendants and will continue to prosecute her claims against the O/D Defendants. As part of the agreement and in addition to the sum to be paid to the bankruptcy estate, Navigators will be granted

relief from the automatic stay to pay defense counsel, Gordon & Rees, fees and costs totaling $137,801.18 for defense of the O/D Defendants.

The settlement is a partial settlement of the adversary proceeding and only Navigators will be released. Two other insurance carriers issued policies that cover or may cover the Trustee's claims against the O/D Defendants: Landmark American Insurance Company, which has defended the O/D Defendants, and Philadelphia Indemnity Company, which has declined to participate in the defense. Landmark's payment of defense costs reduces the amount of coverage available for payment of claims against the policy and it is possible that Landmark's policy limits will be consumed by defense costs. Whether or not coverage from either carrier remains or exists to pay a judgment, the Trustee plans to continue to pursue the claims against the O/D Defendants.

The Trustee engaged in two full-day mediations involving the O/D Defendants, Navigators and Landmark in an attempt to negotiate a global settlement. Philadelphia was present at the first session but not at the second. Settlement efforts at the mediation sessions and follow up efforts by the mediator proved not to be successful. However, the Trustee and Navigators maintained open communication and have been able to reach a settlement between them that the Trustee believes is in the best interest of the estate for the reasons set forth below. The settlement is subject to Bankruptcy Court approval.

**I.     BACKGROUND**

The Debtor abruptly terminated its business on January 31, 2017, and filed a voluntary Chapter 7 petition on February 3, 2017. The Debtor maintained nine offices in seven states; a close affiliate maintained a tenth office in yet another state. As a result of the abrupt closure of the Debtor, the Trustee was required to deal with hundreds of inquiries from clients with adoptions in process and clients with questions about their records. The Trustee was also required to arrange for transfer of voluminous records to appropriate authorities in the states where the Debtor had done business.

In March 2017, the Trustee filed a lawsuit against the O/D Defendants and Navigators, seeking damages for breaches of duty by the former officer and directors. The Trustee named Navigators as a defendant in an abundance of caution based on the existence of a California statute that gives volunteer directors in a non-profit corporation immunity in certain circumstances.

Navigators is not accused of wrongdoing in connection with the alleged breaches by the O/D Defendants. In the time since the Trustee filed the complaint, she has uncovered facts that she believes demonstrate that the O/D Defendants are not entitled to the immunity provided by that statute.

Navigators filed a complaint against the O/D Defendants seeking a judgment declaring that its policy is not implicated by the Trustee's adversary proceeding and it has no duty to defend or cover any of the Trustee's claims.

The total amount of claims on file is approximately $8 million. The Trustee has used that sum as her request for damages in the adversary proceeding. The Navigators' policy has a limit of either $1 million or $1.5 million, a matter that has been in dispute between the Trustee and Navigators. The Landmark policy has a limit of $1.5 million. Both policies are "eroding" policies, which means that actual coverage is reduced by the costs of defense. As of this time, Landmark has obtained relief from the automatic stay to pay up to $300,000 in defense costs from its policy, thereby reducing the amount available for coverage of claims. The Philadelphia policy may have limits of liability up to $2 million. Philadelphia has shown no interest in participating in settlement discussions and asserts that it has no exposure whatsoever under the policy or policies it issued. The Trustee is not optimistic about negotiating a settlement with either Landmark or Philadelphia at this time.

The cost of administering the bankruptcy estate has been very high both in the Trustee's initial effort to deal with records, clients and state agencies, and maintaining possession of leased premises for the time necessary to address records and other concerns and in the litigation. The settlement payment will not be enough for a payment to creditors but it is a significant step toward that goal.

A complete settlement involving all carriers and all parties would be preferable to a settlement with just Navigators. However, a global settlement has not been possible. The partial settlement brings a substantial sum of cash into the estate, resolves a potential coverage dispute, and simplifies the litigation to a certain extent. If this compromise is approved and finalized, the Trustee plans to pursue her claims against the O/D Defendants and obtain a judgment against the O/D

Defendants in the adversary proceeding. If there is insurance available to pay the judgment, the Trustee will seek to satisfy the judgment from available policy limits. But if the policy limits are unavailable because they have been exhausted by the payment of defense costs, or any other reason, the Trustee will seek to satisfy the judgment from the O/D Defendants.

## II. STANDARDS FOR APPROVAL OF A COMPROMISE

Approval or rejection of a compromise is within the Court's discretion. In considering the approval of a proposed compromise, the Court must take into account the following factors:

1. The probability of success in the litigation;
2. The difficulty, if any, to be encountered in collection;
3. The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it;
4. The paramount interest of creditors and proper deference to their reasonable views.

*In re A&C Properties*, 784 F. 2d 1377, 1381 (9th Cir. 1986).

### A. Probability of Success

The Trustee is confident that she is likely to prevail in her litigation against the O/D Defendants, although all litigation is inherently uncertain. That likelihood of success, however, does not address the coverage issues involving Navigators. Navigators has asserted that the claims asserted by the Trustee in the adversary proceeding relate back to claims asserted in January 2016, a year in which Landmark, not Navigators, provided coverage for officer and director claims, and that Navigators is not obligated to cover the Trustee's claims. Navigators has also asserted that the Trustee's claims are excluded from coverage by a Prior Notice exclusion because notice of this claim was given to Landmark, the prior insurer, and by a specific matter exclusion. While the Trustee disputes these contentions, Navigators is confident in its position and withdrew from the defense of the O/D Defendants on learning that Landmark agreed to participate in the defense. The Trustee is aware that the law firm Navigators originally retained to conduct the defense of the adversary proceeding has incurred $137,801.18 in defense costs, which Navigators, subject to the Court's approval, will pay as part of the settlement in addition to the amount it is paying to the Trustee. The Trustee does not dispute that any attorney fee amount that Navigators obtains relief

from the Court to pay will be deducted from the policy limit. If the policy limit is $1 million, as Navigators has argued, the available coverage is less than $900,000 in the Trustee's opinion. Accordingly, payment of $500,000 to the estate represents a significant portion of the coverage if the Trustee prevails in obtaining an order or judgment that Navigators' policy has been invoked. If the policy limit is $1.5 million as the Trustee has argued, the $500,000 remains a significant percentage of the available coverage after payment of allowed defense fees. However, the coverage questions remain.

### B. Difficulty in Collection

Difficulty in collection is a concern to the Trustee. The Trustee's concern is based on the coverage dispute. If the Trustee were to obtain a judgment against the O/D Defendants in a large sum, she would seek to enforce it against Navigators (and the other carriers) and would face strong opposition from Navigators based on the coverage dispute. If the Trustee prevailed in the coverage dispute, she believes that she would not encounter significant difficulty in enforcing a judgment against Navigators' policy. If Navigators prevailed in the coverage dispute, there would be no coverage under the Navigators' policy and no enforcement or payment of the judgment from the Navigators' policy. Navigators has put this serious question at issue by filing its complaint against the O/D Defendants seeking a judgment on this question.

### C. Complexity, Expense, and Delay

In addition to the cash payment to the estate, the proposed compromise removes a significant party from the litigation and will relieve the Trustee from dealing with a coverage dispute with Navigators. If the compromise is approved, the Trustee will dismiss Navigators from the adversary proceeding and no further costs will be incurred by the estate in future litigation against Navigators. Navigators has agreed to dismiss its complaint against the O/D Defendants if this compromise is approved and finalized. In addition to reducing litigation costs, withdrawal of Navigators from the litigation will reduce the complexity of the litigation. The Trustee does not expect the compromise to result in a reduction in delay of administration of the case because of the ongoing litigation with the remaining parties but removes significant coverage issues involving Navigators with which the Trustee would otherwise have to deal.

### D. Paramount Interest of Creditors

Creditors with timely claims on file are receiving the notice filed concurrently herewith and have the opportunity to express their views. The Trustee believes that the compromise benefits the estate because of the elimination of some costs and complexity, the infusion of a substantial amount of cash into the estate, and the opportunity for the Trustee to focus her efforts on Landmark and Philadelphia and on the O/D Defendants.

### III. ANALYSIS OF THE COMPROMISE AS A SALE

A compromise of claims against a defendant in a bankruptcy case in the Ninth Circuit generally must be considered as a sale of assets also.

The agreement with Navigators is not strictly a transaction with a defendant; however, in an abundance of caution, the Trustee is presenting the agreement as a settlement and a sale. The proper standard for a Court to use when considering a proposed motion to sell assets is the business judgment test. *Equity Sec. Holders v. Lionel Corp.* (*In re Lionel*), 722 F. 2d 1063 (2nd Cir. 1983). It is this standard that has been adopted by the vast majority of Courts. *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 515 (Bankr. N.D. Ala. 2002).

> Under this standard, the Trustee has the burden to establish sound business reasons for the terms of a proposed sale. Factors for the Court to consider in whether to approve the sale include: (1) any improper or bad faith motive, (2) price is fair and the negotiations or bidding occurred at arms-length, (3) adequate procedure, including proper exposure to the market and accurate and reasonable notice to all parties in interest. The Trustee is responsible for the administration of the estate and his or her judgment on the sale and the procedure for the sale is entitled to respect and deference from the Court, so long as the burden of giving sound business reasons is met. *In re Bakalis*, 220 B.R. 525, 531-32 (Bankr. E.D.N.Y. 1998) (noting discretion accorded to trustee with regard to sale of assets).

285 B.R. at 514.

The transaction must make good business sense and the creditors as a whole should benefit. *In re UAL Corp.*, 443 F. 3d 565, 571 (7th Cir. 2006).

/ / /

> The "business judgment" test, as it is sometimes called, differs from the business judgment rule under corporate law. *3 Collier in Bankruptcy* ¶ 363.02[4] at 363-18 (*Alan and Resnick and Henry J. Sommer, eds.*, 16th ed. 2012). The bankruptcy court reviews the trustee's business judgment "to determine independently whether the judgment is a reasonable one." Id. At the same time, the court "should not substitute its judgment for the trustee's." Id. A trustee has considerable discretion when it comes to the sale of estate assets, and that discretion is entitled to "great judicial deference" as long as a sound business reason is given. *In re State Park Bldg. Grp. Ltd.*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005); *In re Murphy*, 28 B.R. 1, 5 (Bankr. D. Me. 2002); *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002).

*In re Efoora, Inc.*, 472 B.R. 481, 488 (Bankr. N.D. Ill. 2012).

The Bankruptcy Appellate Panel dealt with a sale/compromise in *In re Lahijani*, 325 B.R. 282 (9th Cir. BAP 2005). In that case, the Chapter 7 trustee proposed to sell avoidance claims to a defendant or potential defendant. The Bankruptcy Appellate Panel reversed the Court order authorizing the sale and ruled that the Bankruptcy Court should have considered the sale as a compromise, and was required to find that the standards required of a compromise were met, as in *In re Mickey Thompson*, 292 B.R. 415 (9th Cir. BAP 2003). In its opinion, the BAP noted that it rejected "appellants' argument that the avoiding power causes of action should not have been sold to one who would not exercise the powers for the benefit of all creditors." 325 B.R. at 288.

In the Trustee's experience, consideration of a compromise as a sale arises most often when a defendant is offering money to resolve claims by an estate fiduciary against it. In this case, an insurance carrier, whose policy may or may not cover the acts of the individual defendants, has negotiated a compromise of its potential exposure by paying the Trustee $500,000 and obtaining a release from the Trustee and the individual defendants. Competitive bidding is not workable in the Trustee's opinion. Any party who believes competitive bidding is appropriate should submit an overbid to the Trustee in care of her counsel at the address above within 21 days of the date of this motion.

/ / /

/ / /

WHEREFORE the Trustee requests entry of an order authorizing the relief sought above.

DATED: September 27, 2018    RINCON LAW, LLP


By: */s/Charles P. Maher*
Charles P. Maher
Counsel for Marlene G. Weinstein, Chapter 7 Trustee